# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HUDSON, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| *Plaintiff,* | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| CAPITAL VACATIONS, LLC, a Delaware limited liability company, | : : : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : : | |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Hudson ("Plaintiff" or "Hudson") brings this Class Action Complaint and Demand for Jury Trial against Capital Vacations, LLC ("Defendant" or "Capital Vacations") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded telemarketing calls to consumers without consent, including calls to phone numbers that are registered on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Hudson, for this Complaint, alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, as follows:

## PARTIES

1. Plaintiff Hudson is, and at all times relevant to this action was, an O'Fallon, Missouri resident.

2. Defendant Capital Vacations is a Delaware registered limited liability company headquartered in Myrtle Beach, South Carolina. Capital Vacations conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the venue is proper under 28 U.S.C. § 1391(b) because the Defendant does business in this District, and the calls at issue were directed to the Plaintiff who resides in this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in January 2024 alone, at a rate of 137.5 million calls per day. www.robocallindex.com (last visited April 14, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

14. Defendant Capital Vacations is a resort management company with over 200 resort destinations in the US, Mexico and the Caribbean.[3]

15. Defendant Capital Vacations solicits travel packages to consumers.

16. To sell its travel packages, Defendant Capital Vacations places telemarketing calls, including calls that use pre-recorded voice messages to consumers throughout the US.

17. Many of these calls are also being placed to consumers who registered their phone numbers on the DNC, as per Plaintiff's experience.

18. Capital Vacations employees have posted job reviews that contain details about the cold calling they engaged in to generate business for the Defendant, including:

> **Great for a loner who loves cold call sales.**
> Call Center Representative (Former Employee) - Springfield, MO - January 22, 2021
>
> Great work/life balance. Monday-Friday is awesome. Getting hung up one 100+ times a day hurts the soul a little. New Manager on floor. Nice people in the trenches.
>
> ✓ **Pros**
> Monday- Friday 9-3:30 day shift
>
> ✗ **Cons**
> Short breaks. Power tripping manager. Not allowed to talk to others.

[4]

---

[3] https://capitalvacations.com/
[4] https://www.indeed.com/cmp/Capital-Vacations/reviews?fjobtitle=Call+Center+Representative&__cf_chl_tk=ZCKLI24ISFR83dIriv6v61xanT9U9K8YWSaKS8bT.lw-1711889317-0.0.1.1-1450





19. Consumers have voiced their complaints online about unsolicited calls that they received from Defendant Capital Vacations, including:

- "I'd give zero stars if I could (why ISN'T that an option...?) These morons call me multiple times a week, don't leave a message, but blow up my phone from several different numbers that all appear local. Annoying, but whatever, right? Well, no. I am currently putting my mother through hospice care locally and get different calls from the same (local) area code from her various doctors, nurses, social workers, etc. And when I answer, 1 out of 3 times it isn't my mother's team... it's another one of these scum bags. ***Take me off your list. I have told you repeatedly.*** My lawyer is already involved and while I don't generally spend money on silly lawsuits, I'm willing to take one for the team this time."[7] (emphasis added)

---

[5] https://www.indeed.com/cmp/Capital-Vacations/reviews
[6] https://www.linkedin.com/in/marc-wilder-0548bb142/
[7] https://www.yelp.com/biz/capital-vacations-myrtle-beach

5

- "***They won't stop calling me every day and I am registered on the NO CALL list***! Rude employee Tenetia doesn't seem to care."[8] (emphasis added)

20. In response to these calls, Plaintiff Hudson files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF HUDSON'S ALLEGATIONS

21. Plaintiff Hudson is the subscriber of the cell phone number ending in 5868.

22. Plaintiff Hudson registered his cell phone number on the Do Not Call registry on December 29, 2023.

23. Plaintiff Hudson uses his cell phone for personal use only to communicate mainly with friends and family.

24. Plaintiff Hudson's cell phone number has never been associated with a business.

25. Plaintiff Hudson's cell phone number is registered under his name.

26. The calls that Plaintiff Hudson received from Defendant Capital Vacations were all received more than 30 days after Plaintiff registered his cell phone number on the DNC.

27. Plaintiff Hudson has received multiple pre-recorded calls from or on behalf of Defendant Capital Vacations using a multitude of phone numbers.

28. When Plaintiff Hudson would answer the calls, he would hear a pre-recorded message regarding Dream Trips.

29. Plaintiff Hudson would stay on the line and connect with a live employee so that he could ask for the calls to stop.

---

[8] *Id.*

30. Plaintiff Hudson specifically told the live employees "Take me off the list".

31. Many of the live employees told Plaintiff Hudson that the calls would stop and others simply hung up when they were told to stop calling.

32. The calls began in February of 2024 and they all began with a pre-recorded voice message.

33. This is a partial list of pre-recorded calls that Plaintiff Hudson received from or on behalf of Defendant Capital Vacations:

- February 26, 2024 at 1:44 PM from 316-465-0157;
- February 26, 2024 at 5:13 PM from 417-249-9660;
- February 27, 2024 at 1:39 PM from 573-383-6986;
- February 27, 2024 at 3:18 PM from 480-896-9203;
- February 27, 2024 at 5:51 PM from 816-320-4374;
- February 28, 2024 at 10:48 AM from 352-623-1225;
- February 28, 2024 at 3:04 PM from 336-645-1739;
- March 1, 2024 at 11:40 AM from 404-348-2980;
- March 1, 2024 at 12:51 PM from 636-280-8571;
- March 3, 2024 at 4:52 PM from 636-800-5050;
- March 4, 2024 at 2:15 PM from 816-424-0184;
- March 4, 2024 at 2:16 PM from 660-235-6327;
- March 4, 2024 at 5:55 PM from 573-327-6185;
- March 4, 2024 at 5:56 PM from 573-327-6184;
- March 6, 2024 at 12:56 PM from 320-233-8580;

- March 7, 2024 at 11:18 AM from 816-424-0264;

- March 7, 2024 at 2:37 PM from 417-209-9080;

- March 11, 2024 at 11:57 AM from 660-235-6447; and

- March 11, 2024 at 1:49 PM from 636-245-7885

34. On March 26, 2024, Plaintiff Hudson received a pre-recorded call from Capital Vacations, from 660-251-6936.

35. Plaintiff Hudson and a staff member working for his attorneys called 660-251-6936 back at approximately 4:50 PM EST on March 26, 2024 from Plaintiff's phone number.

36. The call was answered with a pre-recorded message before a live employee named Heather came on the line.

37. Heather began a sales pitch for a $399 vacation page.

38. She identified the company name as Capital Vacations and said that she was with the special promotions department.

39. During the call, Heather confirmed that the company she worked for's website is capitalvacations.com.

40. The call was disconnected and then Heather called Plaintiff Hudson back right away from 913-258-1410.

41. When 913-258-1410 is called, an automated system identifies the company name Capital Vacations.

42. Plaintiff Hudson could tell that the calls were pre-recorded because the calls would begin with the same message each time before connecting him to a live employee.

43. Plaintiff Hudson has never consented to be called by or had any business

8

relationship with Defendant Capital Vacations.

44. Plaintiff Hudson has not been looking to purchase a vacation or timeshare plan.

45. The unauthorized prerecorded calls that Plaintiff Hudson received from Defendant Capital Vacations have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone.

46. The calls that Plaintiff Hudson received also took up his time, as he would answer and spend time connecting to live employees so he could ask for the calls to stop.

47. Seeking redress for these injuries, Plaintiff Hudson, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ACTION ALLEGATIONS

48. Plaintiff Hudson brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call the Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's residential phone number had been listed on the National Do Not Call Registry for at least thirty days.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time on their residential number, (2) within any 12-month period, (3) including at least once after the person requested that Defendant stop calling.

9

49. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Hudson anticipates the need to amend the Class definitions following appropriate discovery.

50. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) Whether Defendant or an agent working on its behalf placed pre-recorded voice calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

   (b) Whether Defendant or an agent working on its behalf placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(c) Whether Defendant or an agent working on its behalf engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether Defendant's conduct violated the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Hudson. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective

relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Hudson and the Pre-recorded No Consent Class)

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. Defendant Capital Vacations and/or its agents transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using pre-recorded calls.

56. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

57. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Hudson and the Do Not Call Registry Class)

58. Plaintiff repeats and realleges paragraphs 1-53 of this Complaint and incorporates them by reference herein.

59. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

61. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

63. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hudson and the Internal Do Not Call Class)**

64. Plaintiff repeats and realleges paragraphs 1-53 of this Complaint and incorporates them by reference herein.

65. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not

14

to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

66. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

67. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

68. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hudson requests a jury trial.

Dated this 30th of May, 2024.

        Respectfully submitted,

        **JOSEPH HUDSON**, individually and on behalf of all others similarly situated,

        By: */s/ M. Cory Nelson*
        M. Cory Nelson, E.D. Mo. # 63357MO
        MCN Law LLC
        12433 Antioch Rd. # 25442
        Overland Park, KS 66225
        Email: mcorynelson@mcnlawllc.com
        Tel: 913-358-5800

        *Local Counsel for Plaintiff and the putative Classes*

        Avi R. Kaufman*
        kaufman@kaufmanpa.com
        KAUFMAN P.A.
        237 S Dixie Hwy, Floor 4
        Coral Gables, FL 33133
        Telephone: (305) 469-5881

        *Attorneys for Plaintiff and the putative Class*

        *\*Pro Hac Vice motion forthcoming*